IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

ROBERT FRANK SMITH,

                Plaintiff,

VS.

CAPTAIN MARTIN HOUGH, et al.,

                Defendants.

NO. 1: 09-CV-89 (WLS)

PROCEEDINGS UNDER 42 U.S.C. §1983
Before the U. S. Magistrate Judge

**RECOMMENDATION**

Presently pending in this *pro se* prisoner action under 42 U.S.C. § 1983 is a motion for summary judgment filed on behalf of Defendants Hough, McLemore, and Boone (Doc. 30).

Plaintiff alleges that he was processed into the Ben Hill County Detention Center on April 16, 2009 from Bostick State Prison so that he could attend court in Ben Hill County. Plaintiff states that several items of personal property, including jewelry, were taken from him during intake and were never returned to him. Plaintiff further states he was advised by Defendant Sutton, a nurse who works at the Detention Center, that he could not receive any of his prescription medication, which included Synthroid for his thyroid[1], until he was examined by a doctor, and it was the policy of the Detention Center that he could not see a doctor until he was in the facility for at least seven days. (Doc. 3). Plaintiff states that he "may have become somewhat belligerent and started cursing and hollering." (Doc. 3). Plaintiff alleges that Defendants Hough, McLemore, and Boone handcuffed Plaintiff and dragged him into the intake shower, at which time Hough sprayed him in the eyes with pepper spray, Boone tased him with her taser, and McLemore turned the shower on him. (Doc. 3). Plaintiff states he did not receive his medication or receive any medical care for a

---

[1]Plaintiff further states that he has Hepatitis C, but admits that he was not on any medication for that condition. (See amended complaint Doc. 16).

period of five days, or until April 21, 2009, when he processed out of the Detention Center back into the custody of the Georgia Department of Corrections. Plaintiff states that he has recurrent pain as a result of the use of a taser on him, and that he experienced "blurred vision, headaches, slowed balance, slowed or loss apprehension, and some pain." (Doc. 46, Plaintiff's Affidavit ¶¶ 9 and 10).

In determining a summary judgment motion, the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Welch v. Celotex Corp*., 951 F.2d 1235 (11th Cir. 1992)(citing *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp*., 475 U.S. 574 (1986). However, once the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

When the nonmoving party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the nonmoving party's claim, or by pointing to specific portions of the record which demonstrate that the nonmoving party cannot meet its burden of proof at trial. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 606-608 (11th Cir. 1991).

The existence of material disputed facts will not defeat summary judgment in favor of a public official, however, when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [plaintiff's] case, and on which [plaintiff] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23, 106 S.Ct. at 2552. Thus, under such

circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

Defendant Bobby McLemore was at all relevant times the duly elected Sheriff of Ben Hill County, Georgia, and was serving in that capacity during the period from April 16, 2009 to April 21, 2009. Defendant Martin Hough was at all relevant times the Jail Administrator for the Ben Hill County Detention Center. Defendant Beatrice Boone is and was at all relevant times employed as a detention officer at the Ben Hill County Detention Center.

### *Defendant Boone*

Defendant Boone has submitted her affidavit and her time card, showing that she was not working at the Detention Center on the day Plaintiff alleges she tased him, which was April 16, 2009. (Doc. 30, Exhibit B Boone Affidavit, Exhibit B-1).

In his reply brief (Doc. 51), Plaintiff admits that he may have named Defendant Boone incorrectly, as he received the names of the Defendants while he was being transferred back to Bostick State Prison by a jailor who was not involved in any of the incidents alleged. For this reason, Plaintiff asks that Defendant Boone be dropped from this action "for the sake of not harassing someone who had nothing to do with Plaintiff's deprivations..." (Doc. 51 p. 1).

As there does not appear to be any issue of material fact regarding Defendant Boone, coupled with the fact that Plaintiff consents to her dismissal from this action, Defendant Boone is entitled to summary judgment.

### *Defendants Hough and McLemore*

#### *Excessive Force*

Defendants Hough and McLemore assert that they are entitled to summary judgment in part based upon qualified immunity. Defendant Hough also states that he was not in the intake area at

the time Plaintiff was brought into the Detention Center, and denies having used pepper spray on Plaintiff or any other inmate at any time. (Doc. 30, Exhibit A Hough Affidavit ¶ 5, 11). Defendant McLemore also denies being in the intake area at the time in question, and denies that the incident occurred at all. (Doc. 30 Exhibit C McLemore Affidavit ¶ 5-9). However, for purposes of summary judgment determination, the undersigned is construing the evidence in the light most favorable to the Plaintiff, as the nonmovant. Plaintiff has submitted his own sworn statement asserting that Defendants McLemore and Hough were there and participated in or witnessed the alleged excessive force. (Doc. 46).

In his complaint, Plaintiff alleges that "he may have become somewhat belligerent and started cursing and hollering" at being told he would get no medication for seven days. Plaintiff states that Defendants Hough and McLemore then handcuffed Plaintiff and dragged him into the intake shower. Plaintiff alleges that Defendant Hough sprayed Plaintiff in the eye with pepper spray or something similar. Plaintiff states he was hollering and thrashing around, and then someone (Plaintiff initially identifies Defendant Boone, but then later states she was not the person) shot him with a taser gun. Plaintiff then alleges that Defendant McLemore turned the shower on him. (Doc. 3 Complaint and Corrected Complaint).[2]

In their individual capacities, government officials are entitled to immunity from suit "unless the law preexisting [their] supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in [their] place would be on notice that what the defendant official was doing would be clearly unlawful given the circumstances." *Pace v. Capobianco,* 283 F.3d 1275, 1282 (11th Cir.2002); *see also Marsh v. Butler County,* 268 F.3d 1014,

---

[2]In his response to the motion for summary judgment(Doc. 46), Plaintiff includes his sworn statement and his verification that the statements he made in his original and amended complaints are true and correct under penalty of perjury. These documents are in substantial compliance with 28 U.S.C. § 1746, and consequently will be considered herein as properly sworn statements.

1031 (11th Cir.2001) (en banc) (stating that "fair and clear notice to government officials is the cornerstone of qualified immunity").

In ruling on the qualified immunity issue, courts are to engage in a two-step analysis: (1) whether the facts alleged, viewed in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right; and, if so, (2) whether the right violated was clearly established. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). The Supreme Court recently held that, "while the sequence set forth [in *Saucier* ] is often appropriate, it should no longer be regarded as mandatory." *Pearson v. Callahan,* --- U.S. ----, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009).

"For claims of excessive force in violation of the Eighth or Fourteenth Amendments, however, a plaintiff can overcome a defense of qualified immunity by showing only the first prong, that his Eighth or Fourteenth Amendment rights have been violated." *Fennel v. Gilstap,* 559 F.3d 1212, 1216-17 (11th Cir.2009).

To establish a claim for excessive force, a plaintiff must establish both a subjective and objective component. Subjectively, a plaintiff "must prove that 'force was applied ... maliciously and sadistically for the very purpose of causing harm.' " *Campbell v. Sikes,* 169 F.3d 1353, 1374 (11th Cir.1999) (quoting *Whitley v. Albers,* 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)). In determining whether force was applied maliciously and sadistically for the very purpose of causing harm, courts look to five factors: "(1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them." *Campbell,* 169 F.3d at 1375 (internal quotation marks omitted). Objectively, a plaintiff must prove that a requisite amount of force was used against him. "The Eighth Amendment's prohibition of

'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.' " *Hudson v. McMillian,* 503 U.S. 1, 10, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992) (citation omitted). *See also Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178-1179 (2010).

*Whitley* also narrows the precise inquiry applicable when deciding whether officials are entitled to judgment as a matter of law:

> courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support *a reliable inference of wantonness in the infliction of pain* under the standard we have described, the case should not go to the jury.

*Whitley,* 475 U.S. at 322, 106 S.Ct. 1078.

In this case, Plaintiff swears that the assault took place, that he was handcuffed, dragged to the shower area, pepper sprayed in the eyes, and tasered, before having the water turned on him. Plaintiff further swears that the alleged assault resulted in increased long term pain on his hip and thigh, necessitating the increased use of pain medication. Plaintiff has submitted some of his medical records confirming that Plaintiff's pain medication did increase after the alleged incident (Doc. 46 Exhibits 8 and 9). Whether or not the additional pain was the result of the alleged assault is a question of fact.

Defendants Hough and MClemore, conversely, swear that they were not in the intake area at all during the time of the alleged assault, and that the incident did not happen. They also argue that use of pepper spray or a taser does not *per se* demonstrate excessive use of force. Plaintiff has submitted sworn statements asserting that he was handcuffed, dragged, pepper sprayed, and tasered, resulting in lasting injury. What is not in the record is anything regarding the need for the use of force, attempts to temper the use, danger to prison officials, etc... because Defendants aver that the incident never happened in the first place. Therefore, it is difficult to analyze the appropriateness

of the use of pepper spray or a taser under the specific facts of this case, or even to determine whether the incident took place at all.

The undersigned must construe the evidence in favor of Plaintiff as the non-moving party. If believed by the ultimate fact finder, Plaintiff could prevail on the merits regarding the issue of excessive force, as a jury could determine that the facts, as alleged by Plaintiff, show a reliable inference of wantonness in the unnecessary infliction of pain. Therefore, the undersigned determines that there remain genuine issues of material fact, such that summary judgment on the claim of excessive force is not appropriate on the record before the court.

<u>*Official Capacity*</u>

Defendants assert that they are entitled to summary judgment in their official capacity as those claims are barred by Eleventh Amendment immunity. *See e.g. Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003); *Grech v. Clayton County*, 335 F.3d 1326 (11th Cir. 2003); *Purcell v. Toombs County*, 400 F.3d 1313 (11th Cir. 2005). The Eleventh Circuit in *Manders* extended Eleventh Amendment immunity to Sheriff deputies, including jailers, as they are employees to whom the Sheriff delegates authority. *Manders*, 338 F.3d at 1310-11. The sheriff's "authority and duty to administer the jail in his jurisdiction flows from the State, not [the] County." *Manders*, 338 F.3d at 1315. "The 11th Circuit has concluded that Georgia Sheriffs are 'an arm of the State' in the operation of county jails and are therefore entitled to Eleventh Amendment immunities for claims arising out of jail operations." *Youngs v. Johnson*, 2008 WL 4816731 at 18-19 (M.D. Ga. 2008).

Therefore, Defendants McLemore and Hough are entitled to summary judgment on the official capacity claims.

**Defendant McLemore**

<u>*Failure to Intervene*</u>

Plaintiff alleges that Defendant McLemore witnessed the excessive force on April 16, 2009,

7

but refused to stop the other Defendants, and then turned the shower on him. Plaintiff states that Defendant McLemore told him he brought it upon himself. "[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." *Fundiller v. City of Cooper City,* 777 F.2d 1436, 1442 (11th Cir.1985).

As the undersigned has determined that there remain issues of material fact regarding the use of force and whether it was excessive, there necessarily remains an issue with regard to Defendant McLemore's role in the alleged excessive use of force, either as a participant or a bystander who failed to intervene.

*Medical Care*

Plaintiff alleges that it was the policy or procedure of Defendant McLemore, as the Sheriff, to not allow inmates to see any medical care provider unless and until they had been at the Detention Center for a minimum of seven days.

According to his affidavit, it is the policy of Sheriff McLemore that inmates being processed into the Ben Hill County Detention Center undergo a health screening. Health Screening Forms which are prepared at the time of intake are provided to the medical personnel with whom Defendant Southern Health Partners, Inc. contracts to provide medical services at the Ben Hill County Detention Center and are kept in the inmates's medical records maintained by Southern Health Partners, Inc. Plaintiff underwent a health screening at the time he processed into the Ben Hill County Detention Center on April 16, 2009. (Doc. 30 Exhibit C Affidavit of McLemore at ¶ 17, Exhibit C-5).

Inmates at the Ben Hill County Detention Center are provided an Inmate Handbook which advises all inmates that they may request medical/dental treatment by filling out a Medical Request Form which is provided upon request and provides inmates notice of what to do in case of

a medical emergency. "Sick Call" visitation is conducted on a daily basis by a medically trained person provided by Southern Health Partners, Inc. Inmates who are incarcerated at the Ben Hill County Detention Center more than seven (7) days will receive a medical examination by the medical staff provided by Southern Health Partners, Inc. even if said detainees do not have any medical complaints. However, it is also the policy of the Ben Hill County Detention Center that any inmate who requests and needs medical attention shall receive medical attention by the licensed medical personnel provided by Southern Health Partners, Inc., or in cases of an emergency, by EMS or at the local hospital. Sheriff McLemore does not control the manner or method by which health care provision and medical/nursing decisions are made by the licensed professional provided by Southern Health Partners, Inc., other than ensuring policies are in effect so inmates have access to said personnel if they are in need of medical attention. (Doc. 30 Exhibit C Affidavit of McLemore at ¶ 16).

A plain reading of the Inmate Handbook (Doc. 30 Exhibit C-4) reveals that the policy states that any inmate has access to medical care on an as-needed basis, regardless of the time detained at the Detention Center, including emergency care. Regardless of need, however, the Detention Center requires inmates detained for more than seven days to have a medical examination. Plaintiff has misinterpreted what the actual policy states according to the Inmate Handbook.

A claim based on supervisory liability must allege that the supervisor: (1) instituted a custom or policy which resulted in a violation of the plaintiff's constitutional rights; (2) directed his subordinates to act unlawfully; or (3) failed to stop his subordinates from acting unlawfully when he knew they would. *See Goebert v. Lee County*, 510 F.3d 1312, 1331 (11th Cir.2007). However, as the undersigned has found elsewhere[3] that no constitutional violation based on deliberate

---

[3] The undersigned has submitted this day a recommendation to grant summary judgment to Defendants SHP and Sutton on the issue of deliberate indifference to a serious medical need.

9

indifference has occurred, "[a]nalysis of a state entity's custom or policy is unnecessary. *Garczynski v. Bradshaw,* 573 F.3d 1158, 1170 (11th Cir.2009).

For all of the reasons stated above, the undersigned finds that Defendant McLemore is entitled to summary judgment on the issue of maintaining a custom or policy that violates Plaintiff's constitutional rights.

*Deprivation of Property*

Plaintiff also alleges that jail officials confiscated, and then apparently misplaced or lost, Plaintiff's personal property. Plaintiff does not specifically mention any one Defendant as being responsible for the alleged deprivation of his personal property. However, neither negligent nor intentional deprivations of property by a state employee constitute due process violations if a meaningful post-deprivation remedy is available. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Daniels v. Williams*, 474 U.S. 327, 328 (1986). Georgia tort law offers a remedy for prison officials' unlawful deprivation of an inmate's property. *See* O.C.G.A. § 51-10-1; *Byrd v. Stewart*, 811 F.2d 554, 555 n.1 (11th Cir. 1987). Such a cause of action may still remain available to Plaintiff. Therefore, Defendant McLemore is entitled to summary judgment on the issue of deprivation of personal property[4].

*Conclusion*

Therefore, for all the reasons abovesaid, it is the RECOMMENDATION of the undersigned that Defendants' motion (Doc. 30) for summary judgment be **GRANTED in part and DENIED in part**. It is recommended that Defendant Boone be granted summary judgment on the entirety of the complaint; that Defendants Hough and McLemore be granted summary judgment on the official

---

[4] It is unclear whether Plaintiff means to allege that Defendant Hough is also liable for the alleged deprivation of property. To the extent that he does, Defendant Hough is entitled to summary judgment on this issue for the same reasons as Defendant McLemore.

capacity claims and on the deprivation of personal property claim; that Defendant McLemore be granted summary judgment on the medical care policy claim; that summary judgment be denied as to Defendants Hough and McLemore regarding the excessive force claim; and that summary judgment be denied as to the claim of Defendant McLemore's failure to intervene.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable W. Louis Sands, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy.

SO RECOMMENDED, this 27th day of August, 2010.

S// Thomas Q. Langstaff
THOMAS Q. LANGSTAFF
UNITED STATES MAGISTRATE JUDGE

msd