IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

ROBERT FRANK SMITH,

        Plaintiff,

VS.

CAPTAIN MARTIN HOUGH, et al.,

        Defendants.

NO. 1: 09-CV-89 (WLS)

PROCEEDINGS UNDER 42 U.S.C. §1983
Before the U. S. Magistrate Judge

**RECOMMENDATION**

Presently pending in this *pro se* prisoner action under 42 U.S.C. § 1983 is a motion for summary judgment filed on behalf of Defendants Sutton and Southern Health Partners (SHP). (Doc. 33).

Plaintiff alleges that he was processed into the Ben Hill County Detention Center on April 16, 2009 from Bostick State Prison so that he could attend court in Ben Hill County. Plaintiff states that several items of personal property, including jewelry, were taken from him during intake and were never returned to him. Plaintiff further states he was advised by Defendant Sutton, a nurse who works at the Detention Center, that he could not receive any of his prescription medication, which included Synthroid for his thyroid[1], until he was examined by a doctor, and it was the policy of the Detention Center that he could not see a doctor until he was in the facility for at least seven days. (Doc. 3). Plaintiff states that he "may have become somewhat belligerent and started cursing and hollering." (Doc. 3). Plaintiff alleges that Defendants Hough, McLemore, and Boone handcuffed Plaintiff and dragged him into the intake shower, at which time Hough sprayed him in the eyes with pepper spray, Boone tased him with her taser, and McLemore turned the shower on

---

[1]Plaintiff further states that he has Hepatitis C, but admits that he was not on any medication for that condition. (See amended complaint Doc. 16).

him. (Doc. 3). Plaintiff states he did not receive his medication or receive any medical care for a period of five days, or until April 21, 2009, when he processed out of the Detention Center back into the custody of the Georgia Department of Corrections. Plaintiff states that he has recurrent pain as a result of the use of a taser on him, and that he experienced "blurred vision, headaches, slowed balance, slowed or loss apprehension, and some pain." (Doc. 46, Plaintiff's Affidavit ¶¶ 9 and 10).

In determining a summary judgment motion, the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Welch v. Celotex Corp.*, 951 F.2d 1235 (11th Cir. 1992)(citing *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). However, once the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

When the nonmoving party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the nonmoving party's claim, or by pointing to specific portions of the record which demonstrate that the nonmoving party cannot meet its burden of proof at trial. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 606-608 (11th Cir. 1991).

The existence of material disputed facts will not defeat summary judgment in favor of a public official, however, when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [plaintiff's] case, and on which [plaintiff] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily

renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23, 106 S.Ct. at 2552. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

Plaintiff, as summarized above, alleges that Defendant Sutton was deliberately indifferent to his serious medical needs, and that Defendant SHP had a policy in place that inmates could not obtain any medical care at the Detention Center until they had been there for at least seven days.

Defendant Nancy Walker-Sutton, LPN, is a nurse who works in correctional healthcare providing medical treatment to inmates at Ben Hill County Detention Center. Southern Health Partners, Inc. ("SHP") is a company that contracts with various counties to provide medical services to the inmates housed in the county jails, including the Detention Center.

*Defendant Sutton*

It is well established that prison personnel may not subject inmates to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97 (1976). However, "[m]ere incidents of negligence or malpractice do not rise to the level of constitutional violations." Acts or omissions must involve the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25 (1993). In the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. "It is......true that when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." *McElligott v. Foley*, 182 F.3d 1248, 1256-1257 (11th Cir.

1999).

However, "it is not required that the medical care provided to the inmate be perfect, the best obtainable, or even very good." *Estelle*, 429 U.S. at 106. *See also Harris v. Thigpen*, 941 F.2d 1495, 1510 (11th Cir. 1991). The Eleventh Circuit has noted that, "where a prisoner has received medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law." *Hamm v. Dekalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985). "Thus, where an inmate receives medical care, but desires a different mode of treatment, the care provided does not amount to deliberate indifference." *Id.*

In *Estelle v. Gamble*, *supra*, the Supreme Court cautioned that not every allegation of inadequate medical treatment states a constitutional violation. *Estelle* at 105. Mere negligence in diagnosing or treating a medical condition is an insufficient basis for grounding liability on a claim of medical mistreatment under the Eighth Amendment. *Id.* at 106 (stating "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"). A section 1983 claim, therefore, "does not lie if a prisoner's complaint is directed at the wisdom or quality of the medical treatment he received in prison, even if that treatment is so negligent as to amount to medical malpractice." *Brinton v. Gaffney*, 554 F.Supp. 388, 389 (E.D.Pa.1983)(quoting *Estelle, supra*).

"The question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court." *Estelle, supra*, at 107.

The Detention Center policies provide that (1) inmates are not allowed to possess or self-administer their own medication, and (2) inmates shall receive a medical examination by the medical

staff if they are incarcerated more than seven days, regardless of whether the inmate has a medical complaint (Doc. 34 Sutton Aff., ¶ 5; and See Doc. 30 Exhibit C Affidavit of McLemore ¶ 16). The Detention Center and the SHP policies both provide that if an inmate complains of any ailment at any point in time prior to being examined by the medical staff, then the inmate shall be promptly seen by the medical staff, or in cases of an emergency, by EMS or by a physician at the local hospital (Doc. 34 Sutton Aff., ¶ 7; and Doc. 30 Exhibit C McLemore Aff., ¶ 16).

Plaintiff did not bring any medications with him when he arrived at the Detention Center on April 16, 2009, although Plaintiff had them in his possession while at Bostick State Prison for self-administration, according to an earlier correspondence between the medical staff at Bostick and the medical staff at the Detention Center. (Doc. 34 Walker-Sutton Aff., ¶ 14; see also Doc. 30 Exhibit C McLemore Aff., ¶ 10; and Exhibit A Affidavit of Martin Hough ¶ 6).

On April 16, 2009, when Plaintiff arrived at the Detention Center, he was screened by a detention officer for medical issues pursuant to the Center's policy (See Doc. 30 Exhibit C McLemore Aff., ¶¶ 10 and 17; and Exhibit A Hough Aff., ¶ 6). If Plaintiff complained of any medical issues at that time, the screening officer would have informed the medical staff pursuant to the policies and procedures in place. (Doc. 34 Sutton Aff., ¶ 21). However, the medical staff at the Detention Center did not receive any notice of any medical complaints from the screening officer, or from Plaintiff himself (Doc. 34 Sutton Aff., ¶¶ 22, 24, and 25). In addition, despite being provided an inmate handbook by the screening officer, which outlined the procedure for Plaintiff to ask for and receive medical treatment, Plaintiff never filled out a Request for Medical Services Form or otherwise communicated to the medical staff that he had any medical problems requiring treatment. (Doc. 34 Sutton Aff., ¶¶ 23, 24, and 25; and Doc. 30 Exhibit C McLemore Aff., ¶¶ 16 and 17).

Defendant Walker-Sutton denies seeing Plaintiff during the relevant time, and was unaware

he was being housed at the Detention Center during the relevant time of April 16 -21, 2009. (Doc. 34 Sutton Aff. ¶ 26).

Plaintiff has submitted his response in opposition to the motion, and has included portions of his medical records and his own affidavit. (Doc. 46). Plaintiff states that he filed a grievance on April 17, 2009 while at the Detention Center regarding inadequate medical care. (Doc. 46, Exhibit 4). Plaintiff further states that his pain medications had to be increased after his return to Bostick State Prison after the incidents in question because of severe headaches and pain from the alleged assault. Plaintiff states that as a result of going without his thyroid medication for five days, his vision worsened and he had to have new glasses. Further, he states that on September 1, 2009, he had to have unspecified mental health intervention for a "lapsed mental capacity" which he attributes to the events of April 16-21, 2009.

Defendants have submitted Plaintiff's medical records from Bostick State Prison and the Detention Center. They are filed under seal. (Doc. 34). The undersigned has reviewed the medical records. The relevant parts show the following: Plaintiff had been taking Ultram for "bone pain" at least since 2008. When Plaintiff returned to Bostick State Prison on April 21, 2009, he requested a re-order of Tramadol, but made no complaints regarding the events that allegedly took place at the Detention Center. On May 19, 2009, Plaintiff complained of hip and back pain, as well as foot pain; he received a soft-shoe profile for "foot deformities." Plaintiff had his x-ray results discussed with him in August of 2009, which showed that he had mild degenerative changes in his spine, and bony exostosis in his right knee.

Plaintiff complained of blurred vision in May of 2009. He complained again of blurred vision in June of 2009, but stated that he had turned in his glasses because he could not see through them. He complained of blurred vision again in October of 2009, but still did not have any glasses at the time because of the earlier turn in.

Included in his medical records is a notation on December 16, 2009 that Plaintiff had not been taking his Synthroid medication for two months and felt fine.

However, nothing Plaintiff has submitted, and nothing revealed by a review of Plaintiff's sealed medical records, supports Plaintiff's allegation that any condition was caused by or aggravated by him not having the medication in question for a period of five days. While Plaintiff alleges he was issued new glasses because he was denied his medication for Synthroid for five days, there is no medical evidence in the record to show that is the case. Plaintiff now for the first time also alleges he had some sort of mental health lapse or breakdown as a result of being denied his medication; however, the record contains no evidence to support this allegation.

An inmate who alleges that a delay or denial of medical treatment arises to the level of a constitutional violation is required to place verifying medical evidence in the record establishing the detrimental effect of the delay in medical treatment in order to succeed on his claim. *Hill v. DeKalb RYDC,* 40 F.3d 1176, 1189 (11th Cir.1994), *overruled in part on other grounds, Hope v. Pelter,* 536 U.S. 730, 739(202), 122 S.Ct. 2508, 153 L.Ed.2d 666.

Plaintiff in his response admits during his prior periods of incarceration at the Detention Center that he suffered from "some minor complications with blurred vision, headaches, slowed balance, slowed or loss apprehension, and some pain with each occasion worsening each time." (Doc. 46, and Affidavit of Plaintiff at ¶ 9). He further admits he did not complain of having any of these effects until after he was transported back to the Bostick State Prison. (See Doc. 46 Plaintiff's Statement of Material Facts at ¶ 15, and Exhibits 4-5).

However, there is no verifying medical evidence in the record that it was the delay in receiving his medications, as opposed to the underlying conditions themselves, that caused any alleged detriment to Plaintiff's health. Moreover, even if Plaintiff had been able to show that it was the delay that adversely affected him, he still has not shown the requisite level of deliberate

indifference. At most, Plaintiff has shown negligence, which is not cognizable as a violation of constitutional rights under § 1983. The plaintiff must demonstrate more than inadvertence, negligence (even gross negligence), or medical malpractice. *Estelle,* 429 U.S. at 105-06, 97 S.Ct. at 292; *Bozeman v. Orum,* 422 F.3d 1265, 1272 (11th Cir.2005). Consequently, Defendants Sutton and SHP are entitled to summary judgment on the issue of deliberate indifference to a serious medical need.

*Defendant SHP*

Inmates at the Ben Hill County Detention Center are provided an Inmate Handbook which advises all inmates that they may request medical/dental treatment by filling out a Medical Request Form which is provided upon request and provides inmates notice of what to do in case of a medical emergency. "Sick Call" visitation is conducted on a daily basis by a medically trained person provided by Southern Health Partners, Inc. Inmates who are incarcerated at the Ben Hill County Detention Center more than seven (7) days will receive a medical examination by the medical staff provided by Southern Health Partners, Inc. even if said detainees do not have any medical complaints. However, it is also the policy of the Ben Hill County Detention Center that any inmate who requests and needs medical attention shall receive medical attention by the licensed medical personnel provided by Southern Health Partners, Inc., or in cases of an emergency, by EMS or at the local hospital. (Doc. 30 Exhibit C Affidavit of McLemore at ¶ 16).

A plain reading of the Inmate Handbook (Doc. 30 Exhibit C-4) reveals that the policy states that any inmate has access to medical care on an as-needed basis, regardless of the time detained at the Detention Center, including emergency care. Regardless of need, however, the Detention Center requires inmates detained for more than seven days to have a medical examination. Plaintiff has misinterpreted what the actual policy states according to the Inmate Handbook.

To state a claim under § 1983 against a private entity performing public functions, there must

be a policy or custom by which the constitutional deprivation was inflicted. *Buckner v. Toro,* 116 F.3d 450, 452-53 (11th Cir.1997). A policy or custom is established by showing a persistent and widespread practice and an entity's actual or constructive knowledge of such customs, though the custom need not receive formal approval. *Depew v. City of St. Marys, Ga.,* 787 F.2d 1496, 1499 (11th Cir.1986). However, "normally random acts or isolated incidents are insufficient to establish a custom or policy." *Id.*

Again, Plaintiff has failed to establish that a constitutional violation occurred regarding his medical care while at the Detention Center; it necessarily follows that no custom or policy on the part of SHP caused a constitutional deprivation. Consequently, the undersigned finds that Defendant SHP is entitled to summary judgment on the issue of a constitutionally infirm policy or custom.

*Conclusion*

Therefore, for all the reasons abovesaid, it is the RECOMMENDATION of the undersigned that Defendants' motion (Doc. 33) for summary judgment be **GRANTED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable W. Louis Sands, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy.

SO RECOMMENDED, this 27th day of August, 2010.

S// Thomas Q. Langstaff
THOMAS Q. LANGSTAFF
UNITED STATES MAGISTRATE JUDGE

msd